**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**DAYRAL T. NATHAN**                                                                                          **PLAINTIFF**

**V.**                                                                                              **CASE NO. 2:11-CV-138-MTP**

**DR. RONALD WOODALL**                                                                                **DEFENDANT**

OPINION AND ORDER

This matter is before the Court on the Defendant's motion for summary judgment [43]. Having considered the case record and applicable law, the Court finds that the Defendant's motion is well taken and will be granted for the reasons provided below.

Case Background

Plaintiff Dayral T. Nathan, proceeding *pro se* and *in forma pauperis*, filed his complaint pursuant to 42 U.S.C. § 1983 in this Court on July 6, 2011. Nathan is a post-conviction inmate in the custody of the Mississippi Department of Corrections ("MDOC"). He is currently housed at the Mississippi State Penitentiary in Parchman, Mississippi. His claims in this lawsuit arise from events which occurred while he was incarcerated at South Mississippi Correctional Institute ("SMCI") in Leakesville, Mississippi. Nathan asserts that Dr. Ronald Woodall denied him adequate medical care and acted with deliberate indifference to his medical needs while he was housed at SMCI.[1]

The Plaintiff was previously diagnosed with a bulged disc, bone fragments, and arthritis. Doc. [43-3] at 17:22-23. He was prescribed Flexeril, Pamelor, and Ultram to treat these

---

[1] Nathan originally named Wexford Health Care Company as a defendant in this case, but voluntarily dismissed his claims against Wexford at the omnibus hearing. *See* Order [29]

conditions.[2]  *Id*. at 12:2-4; Doc [46] at 414.  Nathan also received injections of Toradol for his back pain.  Doc. [43-3] at 14:23-15:7.  He later started seeing Dr. McCleave who took him off the former medications and gave him Ibuprofen, Naproxen, Tylenol, Tegretol, and other medications.  *Id.* 12:11-22; Doc. [46-1] at 145-146, 235-236.  Nathan advised Dr. McCleave that the new medications were harming him, but she allegedly ignored his complaints.  Doc. [43-3] at 13:1-9.  After his prescriptions for the new medications expired, Nathan put in a request for a doctor's visit and, at that point, he started seeing Dr. Woodall.  *Id*. at 16:5-10.

According to the Plaintiff, Dr. Woodall took him off the medications Dr. McCleave had prescribed and began a new treatment regime which included Toradol injections.  *Id.* at 14:20-16:2.  However, Nathan asserts that he sometimes had to wait 15 to 20 days to get a Toradol injection after having completed a sick call request.  *Id*. at 14:23-15:25.  Nathan claims that Dr. Woodall also prescribed Baclofen, a muscle relaxer, to him but that he often had to wait 30 to 60 days before receiving a refill of the medication.  *Id*. at 16:19-23.

In this lawsuit, Nathan claims that Dr. Woodall acted with deliberate indifference when he delayed in responding to sick call requests and took him off certain medications, which caused the Plaintiff to suffer back and leg pain.  *Id*. at 17:16-20.  Nathan does not know what is wrong with his back or legs, but maintains that he wants to be given proper treatment for his pain.  *Id*. at 11:1-7.  Nathan further claims that Dr. Woodall intentionally withheld and/ or delayed him access to his medications.  *Id*. at 19:4-7.

At this time, Dr. Woodall seeks summary judgment on the Plaintiff's claims.  The

---

[2]The Plaintiff claims that Frank McGrew was the medical doctor who prescribed Flexeril, Pamelor, and Ultran to him; however, the Defendant identifies McGrew as a physician's assistant in his sworn affidavit.  Doc. [43-2] at 2.

Defendant argues that judgment should be entered in his favor because he did not violate the Plaintiff's constitutional rights. Dr. Woodall asserts that no reasonable juror could conclude that he acted with deliberate indifference because he provided Nathan with regular and adequate medical treatment. The Plaintiff has not responded to the summary judgment motion and the time to do so has long since expired. Therefore, the Court will now evaluate the merits of the motion and determine whether it should be granted based on the record before it.

## Discussion

I.   Summary Judgment

Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears burden of "informing the district court of the basis for its motion, and identifying those portions of [the record evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. Once the moving party meets its burden, the nonmoving party must then "come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011).

When ruling on a motion for summary judgment, the court must consider the record evidence and draw all reasonable inferences in the nonmoving party's favor. *Paz v. Brush Engineered Materials, Inc*., 555 F.3d 383, 391 (5th Cir. 2009). However, in the absence of proof, the Court will not assume that the nonmoving party could have proved the necessary facts. *Id*.

II.     Denial of Medical Treatment

To establish a claim for denial of medical treatment under § 1983, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" because "only such indifference [] can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976). "[A] prison official cannot be found liable under the Eighth Amendment...unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 829, 114 S.Ct. 1970, 128 L.Ed. 2d 811 (1970). The official must have known that an inmate faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Id*. at 847. If the risk is obvious, the official's knowledge of that risk may be inferred. *Id.* at 837; *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006).

A prisoner's mere disagreement with medical treatment does not state a valid claim for deliberate indifference. *Castilla v. July*, 470 F. App'x 358, 359 (5th Cir. 2012) (citing *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)). Instead, a prisoner must be able to demonstrate that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985).

According to the medical records in this case, Dr. Woodall treated Nathan for back and/ or leg pain in November 2009, November 2010, December 2010, and February 2011. Dr. Woodall also treated Nathan for other health concerns unrelated to the claims in this lawsuit. In addition, Nathan was treated by other doctors and medical staff during his incarceration at

SMCI.

On November 24, 2009, Dr. Woodall evaluated Nathan regarding his complaints of back pain, leg pain, and stiffness. Doc. [46] at 375-377. Dr. Woodall noted that Nathan had chronic back pain with lumbar disc disease and appeared to be in no acute distress. *Id.* He prescribed 10 milligrams of Baclofen twice daily and 15 milligrams of Mobic once daily. *Id*. Baclofen was used to treat anti spasm symptoms and Mobic was used to treat arthritis. Woodall Affidavit [43-2] at 3. When Dr. Woodall saw Nathan for a chronic care evaluation concerning his diabetes and hypertension on December 2, 2009, the Plaintiff was taking Baclofen, Mobic, and Ibuprofen, all of which treat lower back pain. *Id*.

On November 5, 2010, Dr. Woodall evaluated Nathan in response to his request for an injection of back pain medication. Doc. [46-2] at 19. Dr. Woodall ordered that Nathan take 10 milligrams of Baclofen twice daily. *Id*. at 20. Nathan also received injections of Solumendrol and Toradol for his back pain that day. *Id*.; Woodall Affidavit [43-2] at 3.

On December 8, 2010, Dr. Woodall met with the Plaintiff in response to his complaints of chest pain, headaches, and back pain. Doc. [46-2] at 99. Dr. Woodall noted that the Plaintiff appeared to be well nourished and in no acute distress. *Id*. Nathan was also seen by Nurse Practitioner Gwendolyn Woodland in December 2010, for his complaints of back pain. *Id*. at 139. Nurse Woodland's overall assessment was that Nathan had a muscle sprain. *Id*. at 140. Nathan was ordered to take Extra Strength Tylenol and Ketorolac, use analgesic balm, and receive an injection of Toradol. *Id*. at 140-142.

On February 23, 2011, Dr. Woodall submitted an MDOC Specialty Care Consultation Request for a CT scan of the Plaintiff' lumbar spine. *Id*. at 284. Dr. Woodall noted that the

5

Plaintiff had been suffering from chronic lower back pain and that his X-ray results indicated a decreased disc height. *Id*. Dr. Tom Lehman, the site medical director, responded to the request by asking that Dr. Woodall provide additional information concerning whether Nathan suffered from any neurological deficits or radiculopathy. *Id*. at 284-285. On March 4, 2011, Nathan was transferred from SMCI to Central Mississippi Correctional Facility ("CMCF"). *Id*. at 286. As the Plaintiff had been transferred to another facility, Dr. Woodall did not provide the requested information and on March 28, 2011, Dr. Lehman advised that the consultation request could not move forward. *Id*. at 285.

In his sworn affidavit, Dr. Woodall testified that he never ignored any of Nathan's complaints and that he prescribed what he believed to be the appropriate medical treatment for the Plaintiff's condition. Woodall Affidavit [43-2] at 5. Dr. Woodall also testified that none of the Plaintiff's complaints or medical records demonstrated that his back condition constituted a substantial risk to his health or that his back pain was not being addressed. *Id.* Dr. Woodall further testified that the Plaintiff "consistently received medical treatment for his complaints of back pain, including substantial pharmacological treatment." *Id*.

Based on the evidence in the record, the Plaintiff cannot establish that Dr. Woodall was deliberately indifferent to his medical needs. Indeed, the Plaintiff's claim amounts to nothing more than a disagreement with the course of treatment Dr. Woodall provided on the four occasions he saw Nathan for back and/ or leg pain.

While the Plaintiff may disagree with Dr. Woodall's decision to take him off certain medications, disagreement alone does not constitute deliberate indifference. The record shows that Dr. Woodall prescribed and the Plaintiff took medications to treat back pain, his chief

complaint, at all times alleged in this lawsuit. Thus, it appears the Plaintiff's argument is that Dr. Woodall was deliberately indifferent when he chose to not prescribe medications other doctors had chosen for back pain. Though the Plaintiff may have preferred certain medications to others, he is not guaranteed preferred medications or even preferred treatment by the Constitution.[3]

The record establishes that Dr. Woodall responded to the Plaintiff's sick call requests, prescribed medications to him, and requested that an outside physician evaluate his spine. Shortly after the request for outside treatment was submitted, Nathan was transferred to another facility and was no longer under Dr. Woodall's care. There is no evidence showing that Dr. Woodall refused to treat the Plaintiff, intentionally provided incorrect treatment to him, or engaged in other similar conduct evincing deliberate indifference. To the contrary, the evidence shows that Dr. Woodall responded to the Plaintiff's complaints, prescribed medications to treat his pain, and sought outside treatment for his condition.

As to the claim for delayed treatment, the record shows that Dr. Woodall responded promptly to the Plaintiff's complaints. Nathan submitted a sick call request for a shot of back pain medication on October 27, 2010. Doc. [46-2] at 19. He was seen by Dr. Woodall on November 5, 2010. *Id*. Nathan submitted another sick call request on November 29, 2010, and was seen by Dr. Woodall on December 8, 2010. *Id*. at 99. According to Nathan's medical records, he received continued treatment from Dr. Woodall and other medical staff at SMCI until he was transferred out of Dr. Woodall's care in March 2011. Thus, any delay Nathan may have

---

[3]*See Barksdale v. King*, 699 F.2d 744, 748 (5th Cir. 1983) ("The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves, nor the therapy that Medicare and Medicaid provides for the aged or needy").

experienced was minimal and does not constitute deliberate indifference.

In addition to Dr. Woodall's treatment of Nathan, the record contains more than 1,200 pages of the extensive medical treatment the Plaintiff received during his incarceration.  Nathan has not shown that he faced a substantial risk of harm or that Dr. Woodall knew such a risk existed.  Therefore, having reviewed the medical records and the other evidence in this case, the Court finds that the Plaintiff's claim for deliberate indifference must fail.

Based on the above analysis, summary judgment should be granted in favor of Dr. Woodall.  Accordingly, the Court finds that the Defendant's motion [43] is granted.  A separate judgment will be entered this day pursuant to Fed. R. Civ. P. 58.

SO ORDERED, this the 4th day of April, 2013.

/s/**MICHAEL T. PARKER**
UNITED STATES MAGISTRATE JUDGE